**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

---

ANASTASIA ANDREYEVA,

                Plaintiff,

vs.

NK PROGRESS, INC., NATA'S KIDS, INC.,
and NATALYA KASHUK,

                Defendants.

---

Case No.: 1:26-cv-00541

**CLASS & COLLECTIVE ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL**

---

Plaintiff Anastasia Andreyeva (hereinafter the "Plaintiff"), by and through her attorneys, Sage Legal LLC, on behalf of herself and all others similarly situated, upon personal knowledge as to herself and upon information and belief as to other matters, respectfully brings this Complaint against Defendants NK Progress, Inc. (hereinafter the "NKPI") and Nata's Kids, Inc. (hereinafter the "NKI") (NKPI and NKI collectively hereinafter the "Joint Employers" or the "Corporate Defendants") as well as Natalya Kashuk ("Kashuk") and alleges as follows:

**INTRODUCTION**

1.      Plaintiff brings this lawsuit seeking recovery against Defendants for their violations of the Fair Labor Standards Act, as amended (hereinafter the "FLSA") 29 U.S.C. §201 *et seq.* and the New York Labor Law §§ 190 *et seq.* and §§ 650 *et seq.* (hereinafter the "NYLL").

2.      Upon information and belief, over the course of the last six (6) years, Defendants carried out an unlawful payroll policy and practice by failing to pay Plaintiff for all worked hours as required by law, including non-payment of overtime pay.

3.      Plaintiff has therefore commenced this case to recover unpaid wages she had been deprived of, plus interest (pre-judgment and post-judgment), liquidated damages, attorneys' fees, and costs on behalf of herself and all others similarly situated.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

5.      The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and local laws pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, i.e., Plaintiff performed the work for Defendants in Brooklyn, NY.

7.      At all times material hereto, Plaintiff performed non-exempt duties for the benefit of Defendants in New York including within the borough of Brooklyn.

8.      At all times relevant, Defendants engaged in interstate commerce or in the production of interstate goods for commerce as defined by the Act, 29 U.S.C. §§ 203(r) and 203(s), and had revenues exceeding $500,000.00.

9.      Plaintiff falls within the protections of the FLSA and satisfies the individual coverage requirements because Defendants engaged in interstate commerce.

## PARTIES

10.      Plaintiff is an adult individual who is a resident of Kings County, New York.

11.      Plaintiff was employed by the Defendants in the State of New York during the period of July 2014 to June 2017.

12.      NKPI is a business entity organized under the laws of New York with principal office address at 1733 Sheepshead Bay Road, Suite 16, Brooklyn, NY 11235.

13.      Similarly, NKI is a business entity organized under the laws of New York with principal office address at 1733 Sheepshead Bay Road, Suite 36, Brooklyn, NY 11235.

14.     Upon information and belief, Kashuk is an adult individual who is a resident of Kings County, New York.

15.     Kashuk had and exercised the power to hire, fire, set schedules, determine and set compensation, and set the terms and conditions of employment for Plaintiff and all other employees.

16.     At all times relevant, Defendants employed Plaintiff to perform work on behalf of Defendants within the State of New York.

## STATEMENT OF FACTS

17.     Based upon the information preliminarily available, and subject to discovery in this cause, Defendants did not properly compensate Plaintiff for all hours worked for every workweek.

18.     Plaintiff Andreyeva began working for NKI in or around July 2014, as a "monitoring coordinator/IEP coordinator," and worked approximately forty (40) hours per week.

19.     In June 2017, NKPI was opened by Kashuk.

20.     Plaintiff was offered a position in NKPI as "Service Coordinator" on a contractor basis in addition to her current position at NKI.

21.     In 2018, Plaintiff was told by the Joint Employers that she would be part-time at both companies – in NKPI as a service coordinator and at NKI as a coordinator.

22.     Under this arrangement, the total salary which Plaintiff would receive is equivalent to the salary she received in her previous position at NKI.

23.     Although Plaintiff is not amenable to this change in position, she did not speak up due to fear of retaliation and termination.

24.     From 2018 until 2024, Plaintiff continued in both roles.

25.     Throughout her tenure at NKPI, Plaintiff was the only service coordinator carrying a significant caseload as well as assisting with daily operating tasks.

26.     Frequently, Plaintiff had to encounter difficult situations with providers/therapists enquiring reasons as to why their payments were late and other things considering that Plaintiff was the sole contact person for the Joint Employers.

27.     While few new coordinators were hired throughout this time to assist the Plaintiff, they however left after a short while.

28.     In 2020, Plaintiff continued performing the same roles for the Joint Employers.

29.     Plaintiff worked from home until about July 2020 after the Covid-19 pandemic started to ease up.

30.     In July 2020, Plaintiff was offered employee health insurance after inquiring and Joint Employers started to take deductions from her paycheck.

31.     From 2021 to 2022, Plaintiff continued performing the roles of IEP coordinator and service coordinator at both companies.

32.     Throughout Plaintiff's tenure at NKPI, she was told that she would be promoted to a "service coordinator supervisor" position; however, since there was no one to supervise, no change in salary and/or contract was offered at that time – Plaintiff only received a title change, which was only for Defendants' audit purposes.

33.     At this time, Plaintiff also became pregnant and worked until she gave birth on February 17, 2022.

34.     Plaintiff, lying on a hospital bed, was forced to conduct a meeting for a child on February 17, 2022, the day she gave birth to her own child, because no one at Joint Employers covered it for her.

35.     From February 2022 to August 2022, Plaintiff was offered to work from home (and plaintiff was guided against applying for FMLA).

36.     During this time, Plaintiff had multiple phone calls with parents, and therapists as

4

well came into the office to prepare for an audit (when requested by Kashuk).

37.     In July 2023, an irate therapist came into the Joint Employers' office and became verbally and physically threatening because she was not able to speak with Kashuk as well as her not receiving her payments on a timely basis.

38.     From August 2023 to December 2023, Plaintiff spoke with the Joint Employers requesting a more clinical role in the company as she did not want to complete the role of Service Coordinator, as it was not being aligned with her degree.

39.     Plaintiff was told the Joint Employers would consider this request, but they never got back to her with an answer.

40.     Throughout this time, payroll checks for both Joint Employers were frequently delayed.

41.     On January 11, 2024, a provider came to Joint Employers' office and told Plaintiff that she is not leaving the office until she spoke with Kashuk and sat next to the Plaintiff with her phone in her personal space videotaping her and a co-worker, speaking loudly stating that she was being wronged.

42.     Plaintiff, in response, immediately contacted Kashuk via phone and notified her that Plaintiff was in contact with the provider.

43.     Plaintiff asked for help and was by Kashuk told to "let her wait".

44.     Plaintiff did not feel safe, as she was always the "punching bag" for therapists, being required to answer the phone and relay their message regarding late payments.

45.     On January 17, 2024, Plaintiff informed the Joint Employers that she is resigning from her positions effective on February 1, 2024.

46.     Kashuk questioned Plaintiff's reasons and offered her the role of Program Director at NKPI which Plaintiff declined.

47.     Kashuk asked the Plaintiff to stay on at NKI for an additional few months since their

previous SEIT supervisor also resigned.

48.     Plaintiff was asked to check all the files that she had assigned to herself for the service coordinator and to initiate the transfer of all Plaintiff's cases to a different employee as of February 1, 2024.

49.     In a display of strong professionalism, from February 2024 until August 2024, Plaintiff continued coming to the office to assist with training of a new employee, checking files, and completing some work for NKI.

50.     On April 11, 2024, Plaintiff sent Kashuk an electronic mail to request her outstanding payments from both Joint Employers from 2023.

51.     On April 16, 2024, Plaintiff, while in the office, spoke with Kashuk regarding the electronic mail she had sent requesting payment.

52.     Kashuk informed the Plaintiff that she was disappointed in her electronic mail message as she should have "come to her in person to talk" and told Plaintiff that she is a poor employee who has not completed any work.

53.     Kashuk further informed the Plaintiff that she saw her not completing her work on a timely basis but despite that observation, she did not say anything then.

54.     Kashuk insisted to the Plaintiff that she had been so nice to her and yet the Plaintiff, in writing and sending the aforementioned electronic mail message showed her how ungrateful Plaintiff was and that she was never loyal to the Joint Employers.

55.     Kashuk argued that she wanted to offer Plaintiff a higher-paid position at NKI, but Plaintiff declined.

56.     Kashuk also told the Plaintiff she could not pay her until the Plaintiff checked all the files.

57.     Throughout this conversation, Plaintiff was not able to speak.

58.     On September 9, 2024, Plaintiff finished checking the files and although there was

no specified timeline given to the task given, she finished it on her own time.

59.     After requesting for the settlement of the outstanding payments, the Joint Employers told Plaintiff that the old files have to be rechecked before she could receive payment.

60.     On September 23, 2024, Plaintiff sent another electronic mail message to the Joint Employers, through Kashuk, reiterating her request for the outstanding payments but Plaintiff was told to wait again and accused her of, despite not doing any work, will still be paid.

61.     On November 1, 2024, Plaintiff sent a message again to the Joint Employers to request the outstanding payments, but this time, she did not receive any response.

62.     On January 15, 2025, Plaintiff mailed Joint Employers again to request the outstanding payments and received a response from Kashuk's son, Vyashslav Kashuk, on January 17, 2025 indicating that payments will not be made.

63.     On January 22, 2025, Plaintiff sent an electronic mail message to Joint Employers asserting that if she (Plaintiff) does not receive the entire amount owed by Defendants on or before February 5, 2025, she will be constrained to commence legal action to protect her interest.

64.     On January 25, 2025, Plaintiff received a response from Vyashslav Kashuk that all payments will be made by March 31, 2025, and one check has been sent.

65.     However, that one check was insufficient to pay for all work performed by Plaintiff, which Plaintiff informed the Defendants of.

66.     Despite the foregoing exchanges and the promise made by Joint Employers to pay Plaintiff, the Joint Employers failed and refused to comply with their undertakings resulting to Plaintiff being not compensated for the workweeks she rendered to the benefit and gain of the Joint Employers.

67.     At all times relevant, the Joint Employers have actual or constructive knowledge and otherwise suffered or permitted Plaintiff to perform compensable work duties.

68.     At all times relevant, the Joint Employers have actual knowledge that they were

obligated under the FLSA to track and record Plaintiff's hours accurately and with precision.

69.     Plaintiff, by reason of the non-payment of her wages and the inhumane treatment by Joint Employers towards her, was then forced to stop reporting for work with Joint Employers after having her requests and complaints concerning the same fell on deaf ears.

70.     At all times during their employment with the Joint Employers, Plaintiff was an exemplary employee who never received any citation or negative feedback regarding her work performance, and maintained communication with Joint Employers after hours as needed.

71.     Upon information and belief, the Joint Employers at all times during the relevant time period willfully failed to keep accurate payroll records as required by the FLSA.

72.     As a result of Joint Employers' violation and failure to pay proper wages, Plaintiff suffered concrete harm resulting from Plaintiff's lack of pay that she should have received for her hours worked in compliance with the FLSA.

73.     Furthermore, Joint Employers' willful failure to keep accurate records of Plaintiff's hours worked prevented Plaintiff from being able to calculate her total hours worked and determine if she was being paid in accordance with the FLSA.

74.     As a result of these violations of labor laws, Plaintiff seeks compensatory damages and liquidated damages in an amount to be determined at trial.

75.     Plaintiff also seeks interest, attorney's fees, costs, and all other legal and equitable remedies this Court deems appropriate.

## FLSA COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiff brings this FLSA claim as a collective action on behalf of herself and others similarly situated who have been employed by Joint Employers during the full statute of limitations period (hereinafter the "FLSA Collective Members").

77.     At all relevant times, Plaintiff and the FLSA Collective Members were similarly situated, had substantially similar job requirements, were paid in the same manner and under the

same common policies, and were subject to Joint Employers' practices of: (i) failing to compensate Plaintiff and the FLSA Collective Members at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; and (ii) failing to timely pay all wages owed.

78.    At all relevant times, Joint Employers have been fully aware of the duties performed by Plaintiff and the FLSA Collective Members, and that those duties were not exempt from the provisions of the FLSA.

79.    Joint Employers' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective Members.

80.    As a result of their unlawful conduct, Joint Employers are liable to Plaintiff and the FLSA Collective Members for the full amount of their unpaid wages and late wages, with interest, plus an equal amount as liquidated damages, plus reasonable attorneys' fees and costs incurred by Plaintiff and the FLSA Collective Members.

81.    While the exact number of the FLSA Collective is unknown to Plaintiff at this time, upon information and belief, there are approximately forty (40) individuals of the FLSA Collective Members.

82.    Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective Members.

83.    Accordingly, the Court should require Joint Employers to provide Plaintiff with a list of all individuals of the proposed FLSA Collective Members, along with their last known addresses, telephone numbers, and email addresses, so Plaintiff may provide the members of the FLSA Collective Action notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

84.    Plaintiff brings this action, in part, as a class action under the NYLL as well as all

applicable regulations thereunder.

## A. Class Definition

85.    Plaintiff seeks to maintain claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), on behalf of herself and a class of all other employees who have been employed by Joint Employers at any time during the full statute of limitations period (hereinafter the "Class").

86.    Additionally, Plaintiff seeks to maintain claims, pursuant to Rule 23, on behalf of herself and a subclass of all individuals who have been employed by Joint Employers at any time during the full statute of limitations period (hereinafter the "Subclass").

87.    Plaintiff alleges, on behalf of herself and the Class, that Joint Employers violated the NYLL by, *inter alia*: (i) failing to compensate Plaintiff and the Class for all hours worked at their established regular rates of pay in accordance with their agreed terms of employment; (ii) failing to compensate Plaintiff and the Class at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek; (iii) failing to timely pay all wages owed; (iv) failing to provide Plaintiff and the Class with Notices of Pay Rate; and (v) failing to furnish accurate wage statements to Plaintiff and the Class.

88.    Plaintiff further alleges, on behalf of herself and the Subclass, that Joint Employers violated the NYLL by, *inter alia*, failing to compensate them and the Subclass at the State minimum wage for all hours worked.

89.    Plaintiff, the Class, and the Subclass have standing to seek such relief because of the adverse effects that Joint Employers' wage practices have had on them individually and as a group.

90.    The wage practices described herein are part of Joint Employers' normal course of conduct.

91.    Pursuant to Rule 23, Plaintiff's NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class or Subclass.

**B. Numerosity and Impracticability of Joinder**

92.     The members of the Class and Subclass are so numerous that joinder is impracticable.

93.     While the exact number of the members of the Class is unknown to Plaintiff at this time, upon information and belief, there are approximately forty (40) members of the Class.

94.     While the exact number of the members of the Subclass is unknown to Plaintiff at this time, upon information and belief, there are approximately forty (40) members of the Subclass.

95.     Therefore, the numerosity requirement of Rule 23(a) is satisfied.

**C. Common Questions of Law and Fact**

96.     Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and Subclass and predominate over any questions only affecting the members of the Class or Subclass individually.

97.     Indeed, there are few, if any, purely individual issues in this action.

98.     The questions of law and fact that are common to Plaintiff, the Class, and the Subclass include, without limitation:

(a) Whether Joint Employers failed to pay Plaintiff and the Subclass at the State minimum wage rate;

(b) Whether Joint Employers failed to pay Plaintiff and the Class for all hours worked at their regular rates of pay and in accordance with their agreed terms of employment;

(c) Whether Joint Employers failed to pay Plaintiff and the Class all overtime wages owed to them;

(d) Whether Joint Employers failed to timely pay Plaintiff and the Class their wages;

(e) Whether Joint Employers failed to provide Plaintiff and the Class with Notices

of Pay Rate;

(f) Whether Joint Employers failed to furnish accurate wage statements to Plaintiff and the Class; and

(g) Whether Plaintiff, the Class, and the Subclass are entitled to liquidated damages and injunctive relief.

99.    Therefore, the common question requirement of Rule 23(a) is satisfied.

## D. Typicality of Claims and Relief Sought

100.    Plaintiff's claims are typical of the claims of the members of the Class and Subclass they seek to represent.

101.    Plaintiff, the Class, and the Subclass work or have worked for Joint Employers, and are or were subject to the same compensation policies and practices.

102.    The wage violations suffered by Plaintiff, and the damages resulting therefrom, are typical of Joint Employers' treatment of their Employees, generally, and of the Class and Subclass, specifically.

103.    Therefore, the typicality requirement of Rule 23(a) is satisfied.

## E. Adequacy of Representation

104.    Plaintiff will fairly and adequately protect the interests of the Class and Subclass because Plaintiff 's interests are coextensive and aligned with those of the members of the Class and Subclass.

105.    Plaintiff has no interests adverse to the Class and Subclass they seek to represent.

106.    Plaintiff is willing and able to represent the Class and Subclass fairly and vigorously, in part because they do not assert any individual claims separate and apart from the Class and Subclass she seeks to represent.

107.    Plaintiff has retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action

of this size and complexity.

108.    The combined interests, experience, and resources of Plaintiff and their counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of Rule 23(a).

**F. Requirements of Rule 23(b)(1)**

109.    Without certification of the Class and Subclass, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

110.    Accordingly, certification of the Class and Subclass is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Class, the Subclass, and Defendants.

111.    By filing this Complaint, Plaintiff preserves the rights of the members of the Class and Subclass with respect to the statute of limitations on their claims.

112.    Therefore, failing to certify the Class and Subclass would substantially impair and/or impede the ability of the members of the Class and Subclass to protect their interests.

**G. Requirements of Rule 23(b)(2)**

113.    Defendants acted on grounds, as described herein, generally applicable to Plaintiff, the Class, and the Subclass by denying Plaintiff and the Subclass minimum wages, and denying Plaintiff and the Class overtime wages, failing to pay them for all hours worked at their established rates of pay in accordance with their agreed terms of employment, failing to pay wages on time, and failing to provide Notices of Pay Rate and furnish accurate wage statements.

114.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff, the Class, and the Subclass as a whole.

115.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum and

overtime wages, wages paid at their regular rates of pay, timely payment of wages, Notices of Pay Rate and accurate wage statements.

116.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiff and the Class's and Subclass's entitlement to monetary and non-monetary remedies for such wage violations.

117.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H. Requirements of Rule 23(b)(3)**

118.    The common issues of fact and law affecting Plaintiff's claims and those of the Class and Subclass — including, without limitation, the common issues identified in the paragraphs above — predominate over issues affecting only individual claims.

119.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff' claims and those of the Class and Subclass.

120.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the Class and Subclass to pursue their claims individually.

121.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the Class and Subclass (they must have worked for Defendants as Employees during the statutory period), as well as the common questions of law and fact described herein.

**CAUSES OF ACTION**
**COUNT I**
**VIOLATION OF THE FLSA: UNPAID WAGES AND OVERTIME**
**PAY (on behalf of the Plaintiff and the FLSA Collective Members)**

122.    Plaintiff, on behalf of herself and the FLSA Collective Members, re-alleges, and incorporate here by reference, all allegations contained in the paragraphs above.

123.    Joint Employers knowingly and willfully failed to pay Plaintiff and the FLSA

Collective Members their wages and overtime compensation for the actual hours that they worked.

124.    Similarly, Joint Employers are liable to the Plaintiff and the FLSA Collective Members for associated damages pursuant to 29 U.S.C. § 206(a)(1).

125.    By reason of the said intentional, willful, and unlawful acts of Joint Employers, Plaintiff and the FLSA Collective Members have suffered damages and have incurred costs as well as reasonable attorneys' fees.

126.    Because Joint Employers' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 225.

127.    Because Joint Employers' violations of the FLSA were not the product of objective good faith or otherwise objectively excusable, Plaintiff and the FLSA Collective Members are entitled to liquidated damages.

128.    As a result of Joint Employers' unlawful acts, Plaintiff and the FLSA Collective Members have been deprived of her wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and interest (pre-judgment and post-judgment).

## COUNT TWO
### VIOLATION OF THE NYLL: FAILURE TO PAY OVERTIME
#### (on behalf of the Plaintiff and the Class)

129.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

130.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., as well as all applicable regulations thereunder.

131.    The NYLL requires covered employers, including Joint Employers, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek and at a rate not less than one and one-half times the

applicable State minimum wage for all hours worked in excess of 40 hours in a workweek.

132.    Plaintiff and the Class were not exempt from the requirement that Joint Employers pay them overtime under the NYLL, and they are entitled to be paid overtime by Joint Employers for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

133.    Throughout the full statute of limitations period, Joint Employers have engaged in a policy and practice of failing to compensate Plaintiff and the Class at a rate not less than one-and-one-half times their regular rate of pay for time spent performing off-the-clock work in excess of 40 hours in a workweek.

134.    As a result of Joint Employers' failure to compensate Plaintiff and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Joint Employers have violated the NYLL and/or applicable regulations thereunder.

135.    Joint Employers have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

136.    Joint Employers' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### COUNT THREE
### VIOLATION OF THE NYLL: FAILURE TO PAY ALL WAGES
### OWED (on behalf of the Plaintiff and the Class)

137.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

138.    During the full statutory period, Plaintiff and the Class were protected by the

provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

139.    The NYLL requires covered employers, including Joint Employers, to compensate Plaintiff and the Class at their established regular rates of pay for all hours worked in a workweek.

140.    Plaintiff and the Class were not exempt from the requirement and are entitled to be paid by Joint Employers at their established regular rates of pay for all hours worked in a workweek, during the full statute of limitations period.

141.    Throughout the full statute of limitations period, Joint Employers have engaged in a common policy and practice of failing to pay Plaintiff and the Class at their established regular rates of pay for all hours worked.

142.    As a result of Joint Employers' failure to compensate Plaintiff and the Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Joint Employers have violated the NYLL and/or applicable regulations thereunder.

143.    Joint Employers have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

144.    Joint Employers' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, inter alia, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## COUNT FOUR
## VIOLATION OF THE NYLL: NOTICES OF PAY RATE
### (on behalf of the Plaintiff and the Class)

145.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

146.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations

thereunder.

147.    The NYLL requires covered employers, including Joint Employers, to provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

148.    Plaintiff and the Class were not exempt from the requirement that Joint Employers provide them with Notices of Pay Rate.

149.    Throughout the full statute of limitations period, Joint Employers have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiff and the Class.

150.    As a result of Joint Employers' failure to provide Notices of Pay Rate to Plaintiff and the Class, Defendants have violated, *inter alia*, NYLL § 195.

151.    Joint Employers have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiff and the Class in accordance with the NYLL.

152.    Joint Employers' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $50.00 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

### COUNT FIVE
### VIOLATIONS OF THE NYLL: INACCURATE WAGE
### STATEMENTS (on behalf of Plaintiff and the Class)

153.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the

foregoing allegations as if set forth fully herein.

154.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

155.    The NYLL requires covered employers, including Joint Employers, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . ; and net wages."

156.    Plaintiff and the Class were not exempt from the requirement that Joint Employers provide them with accurate wage statements.

157.    Throughout the full statute of limitations period, Joint Employers have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiff and the Class.

158.    As a result of Joint Employers' failure to furnish accurate wage statements to Plaintiff and the Class, Joint Employers have violated, *inter alia*, NYLL § 195.

159.    Joint Employers have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiff and the Class in accordance with the NYLL.

160.    Joint Employers' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $250.00 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the FLSA Collective Members, the Class, and the Subclass, respectfully requests that the Court:

A. Declare that the practices complained of herein are unlawful under applicable federal and State laws;

B. Grant an injunction and order permanently restraining Joint Employers from engaging in such unlawful conduct;

C. Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Joint Employers to provide Plaintiff with a list of all members of the FLSA Collective Members, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D. Designate Plaintiff as the representative of the FLSA Collective Members, and her counsel of record as class counsel;

E. Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Joint Employers' violations of the FLSA, and award those damages against Joint Employers and in favor of Plaintiff and the FLSA Collective Members, plus such pre-judgment and post judgment interest as may be allowed by law;

F. Declare this action to be maintainable as a class action pursuant to Rule 23, and direct Joint Employers to provide Plaintiff with a list of all members of the Class and Subclass, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

G. Designate Plaintiff as the representative of the Class, and her counsel of record as class counsel;

H.  Designate Plaintiff as the representative of the Subclass, and her counsel of record as class counsel;

I.  Determine the damages sustained by Plaintiff, the Class, and the Subclass as a result of Joint Employers' violations of the NYLL, and award those damages against Joint Employers and in favor of Plaintiff, the Class, and the Subclass, plus such pre-judgment and post-judgment interest as may be allowed by law;

J.  Award Plaintiff, the FLSA Collective, the Class, and the Subclass an additional equal amount as liquidated damages because Joint Employers' violations were without a good faith basis;

K.  Award Plaintiff, the FLSA Collective, the Class, and the Subclass their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

L.  Grant Plaintiff, the FLSA Collective, the Class, and the Subclass such other and further relief that the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: Flushing, New York
        January 30, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

 */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Anastasia Andreyeva*

21