# EXHIBIT B



## NK Progress Inc
### Early Intervention Program

### <u>EMPLOYMENT AGREEMENT</u>

AGREEMENT made on the 7th day of June, 2017, by and between NK PROGRESS INC, a New York limited liability Employer (hereafter the "Employer"), and Anastasia Andreyeva, residing at 2611 East 13th Street APT 3C Brooklyn, NY 11235 (hereafter the "Employee").

WHEREAS, the Employer is approved by the New York State Department of Health (hereinafter the "DOH") to provide Early Intervention services (hereinafter the "EI services") services and has a contract with the DOH to be a provider of EI SERVICES (the "Provider Agreement").

WHEREAS, the Provider Agreement and any attachments and appendices thereto are expressly incorporated and made a part of this Agreement, and are available to Employee in the Employer's offices upon request at any time during normal business hours.

WHEREAS, the Employee is a special education teacher duly licensed and/or certified to provide EI SERVICES in the State of New York.

WHEREAS, the Employee desires employment as an employee of the Employer to provide EI SERVICES to Employer's children.

WHEREAS, the Employer desires to employ the Employee upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the promises and mutual covenants and conditions herein contained, the parties hereto hereby agree as follows:

## I.    <u>Employment</u>

1.1     Employer agrees to employ the Employee, and the Employee agrees to be employed by the Employer, as a special education teacher providing EI SERVICES and other related services (hereinafter the "Services"), upon the terms and conditions set forth in this Agreement.

1.2     Employer's and Employee's agreement herein is conditional upon, and during the term of this Agreement their respective obligations are contingent upon continuous compliance with the following:

(a)     Upon execution of this Agreement, Employee will provide the Employer with all applicable original documents evidencing his/her New York State license and/or certification, as required by New York State laws or regulations, and the licenses, certificates and/or permits required under any federal, state or local law or regulation, consistent with the requirements of the Provider Agreement between the Employer and the DOH.  Said requirements are attached hereto as Exhibit "A" and made a part hereof.  Copies of Employee's documents together with an original executed copy of this Agreement will be placed and maintained in Employee's personnel file.

(b)     Employee shall complete the New York State Central Register Database Check (child abuse and maltreatment screening) prior to the commencement of his/her employment hereunder.

(c)     Employee agrees to comply with any and all licensing and continuing education requirements set forth by the State of New York;

(d)     Employee will comply with all provisions of any federal, state or local law, rule or regulation relating to his/her profession;

(e)     Employee agrees to comply with the appropriate security clearance procedures, as set forth in paragraph 26 (A) of the Provider Agreement between the Employer and the DOH (see Exhibit "A" attached hereto).  If it is determined as a result of such security clearance procedures that Employee will be denied access to the Employer's children, the Employer reserves the right, in its sole discretion, to take any and all appropriate action, including but not limited to the immediate termination of this Agreement;

(f)     Employee agrees to comply with the appropriate health clearance requirements, as set forth in paragraph 26 (B) of the Provider Agreement between the Employer and the DOH (see Exhibit "A" attached hereto).  If Employee fails to obtain the necessary health clearance to perform services under this Agreement, the Employer reserves the right, in its sole discretion, to take any and all appropriate action, including but not limited to the immediate termination of this Agreement; and

(g)     Employee covenants, represents and warrants that he/she is not prohibited from performing services under this Agreement because of the existence of a conflict of interest, as defined in paragraph 33 of Appendix A to the Provider Agreement between the Employer and the DOH, the text of which is attached hereto at Exhibit "A".

## II.    Term of Employment

2.1    This Agreement shall commence as of June 7, 2017 and shall continue in effect for a period of one (1) year thereafter.  This Agreement shall be automatically renewed for successive one (1) year terms unless (a) either party notifies the other in writing at least thirty (30) days prior to the end of then-current term that it elects to terminate at the end of the then-current term, (b) either party is in default under the terms of this Agreement, or (c) either party terminates the Agreement pursuant to Paragraph 6 hereof.

## III.    Employment Compensation

3.1    Employee shall be compensated at a rate of $65 per hour and at a rate of

$ _____ pare ½ hour for the Services performed in accordance with each child's Individual Family Service Plan ("IFSP").  Employee shall be paid a prorated amount based upon this hourly rate for all half-hour EI SERVICES sessions.  Employee acknowledges that his/her work shall be performed as directed by Employer and in accordance with each individual student's IFSP in a manner that complies with the applicable provisions of the Provider Agreement between the Employer and the DOH, the policies and procedures of the Employer made from time to time, and the rules and regulations applicable to the provision of the Services in the State of New York.  Employee acknowledges and agrees that he/she shall only be entitled to the compensation set forth in this Agreement, and that the Employer will not be obligated to provide any additional compensation or benefits to or on behalf of Employee, unless otherwise required to do so by law.

3.2    Employee shall keep accurate records of the time worked and shall timely submit all of his/her time records and required reports for the month worked together with all supporting documentation by no later than the fourth (4th) day of the following month.  So long as Employee (a) complies with Employer's policies and procedures, the rules and regulations applicable to the provision of Services, and the Provider Agreement between the Employer and the DOH, and (b) timely submits his/her monthly reimbursement reports by no later than the fourth (4th) day of the following month, Employee shall receive his/her compensation for the time worked by the 1st day of the month following the month Employee submits his/her reimbursement request.

## IV.    Provision of Services

4.1    Employee agrees to serve the Employer faithfully and to the best of his /her ability and shall-devote his/her entire professional time, attention, energies, and best efforts to the business of the Employer during regular business hours and at any other time during the week, as reasonably requested by the Employer.  Employee's services shall be as assigned by the

Employer, and shall include, but not necessarily be limited to, the provision of EI SERVICES to the Employer's children.

4.2     Employee shall perform the Services required of him/her pursuant to the terms of this Agreement at the offices of the Employer as presently or may hereafter be located, or at any other approved locations, including but not limited to an approved pre-kindergarten or head start program, a student's home, a hospital, a state facility, or some other appropriate child care location where Employer provides the Services to its children.  At no time shall the Employee perform the Services at premises owned by, leased to, licensed to or otherwise controlled by the Employee, or any other not approved location.

4.3     Employee agrees that he/she shall provide the Services to children of the Employer in accordance with all applicable laws and regulations, and the Provider Agreement between the Employer and the DOH and all attachments and appendices thereto, which the Employee agrees to review and comply with.  Employee will provide all of his/her services in a professional manner and a timely fashion, as required by Employer. Employee understands that should the services performed be improper, untimely, not in conformance with applicable laws and regulations or improperly documented, the Employer may report such information to the appropriate authorities.

4.4     Employee shall comply with all professional obligations, rules and procedures as established by the Employer and shall comply with all requests of the Employer concerning compliance.

4.5     Employee shall participate in clinical, educational and administrative meetings and activities as deemed necessary by the Employer.  Employee shall also participate in quality assurance programs and other regulatory reviews applicable to the services provided by the Employee.

4.6     Employee agrees to comply with the written rules and regulations of Employer, relating to the performance of his/her duties, and to carry out and to perform orders, directions and policies stated by Employer to him/her from time to time, either orally or in writing. Employee also agrees to comply with all applicable federal, state or local laws.

4.7     Employee agrees to comply with all HIPPA policies and procedures, including policies pertaining to the use of Protected Health Information off Employer's premises. Employee further agrees to strictly comply with any and all applicable laws, rules and regulations with respect to maintaining the confidentiality of all HIV-related information, and in accordance with paragraph 20 of the Provider Agreement between the Employer and the DOH (see Exhibit "A" attached hereto).

4.8     Employee agrees to comply with any and all applicable provisions contained in the Provider Agreement between the Employer and the DOH including but not necessarily

limited to those provisions relating to the student withdrawal and discharge, retention of records, student attendance, student absences, student supervision, and reporting requirements, including but not limited to the provisions of paragraphs 5(c), 8, 9A, 11, 14, and 16 of the Provider Agreement (see Exhibit "A" attached hereto).

4.9     Employee further agrees to keep strictly confidential all personally identifiable student and staff information obtained by, or furnished to, Employee, as well as all reports and/or studies containing such information, in full compliance with the confidentiality provisions set forth in paragraph 29 of Appendix A to the Provider Agreement between the Employer and the DOH (see Exhibit "A" attached hereto).

4.10    Employee further agrees to comply with any and all applicable provisions of the federal Family Educational Rights and Privacy Act ("FERPA"), including but not limited to those FERPA provisions that protect the privacy of certain student education-records.

4.11    Employee agrees that once the Employee is assigned a student, that student shall be under Employee's responsibility for service provisions according to the IFSP.

4.12    Employee shall provide care to a patient and/or student in full compliance with Federal and New York State regulations and in accordance with the IFSP prepared and signed by the parents and NY City EIOD confirming that services provided are developmentally necessary. It is the Employee's responsibility to inform the Employer about the recommended changes in frequency, duration and goals of therapies that would be educationally and developmentally appropriate for the patient within the authorized period.

4.13    Employee shall keep accurate and concise records, shall provide regular progress reports, and will notify the Employer within 24 hours of interruption in services and the reason for interruption if the eligible child misses three (3) or more consecutive scheduled sessions.

4.14    Employee shall maintain and timely submit to the Employer daily session notes containing at the minimum following:

(a)     Daily session notes for services provided must be handwritten and contain original contemporaneous signatures and the caregiver and the Employee. If the caregiver is other than legal guardian, indicate the relationship (i.e. babysitter, grandparent).

(b)     Child's name.

(c)     Date and exact time the service was rendered (specify am or pm).

(d)     Provider's name and profession and full signature.

(e)     IFSP goals worked on and met.

(f)     Description of activities (minimum 3 activities).

(g)     Child's response to each activity.

(h)     Child's progress.

## V.     Records

5.1     Employee acknowledges that all student records, including, without limitation, medical records, are the sole property of Employer.  During the term of this Agreement and upon the termination of this Agreement, Employee shall not be entitled to copy, remove, keep or preserve records or charts belonging to the Employer concerning any student unless said student shall specifically request a different disposition of his or her records, and then only to the extent that such a different disposition is permitted under the Provider Agreement between the Employer and the DOH.

## VI.    Termination

6.1     Employee's employment with the Employer shall be terminated hereunder upon the happening of any of the following events:

(a)     Whenever the Employer and the Employee shall mutually agree to termination in writing;

(b)     Receipt by the Employer of written notice from Employee notifying Employer of his/her desire to resign as Employee, in which event Employee must provide at least thirty (30) days' notice and provided further that the failure to give such notice shall itself be grounds for immediate termination;

(c)     Upon the Employer's written notice to Employee of its termination of this Agreement for any reason or for no reason;

(d)     Failure of Employee to maintain necessary certification in the jurisdiction wherein services are to be rendered, or failure of the Employee to supply the Employer with proof of such certification;

(e)     Failure of Employee to provide proof of good health and absence of communicable disease annually or upon request from the Employer;

(f)     Failure of Employee to perform an assigned shift without providing the Employer with adequate cancellation notice;

(g)     Determination by the Employer that any of the Employee's representations and/or warranties contained herein are false;

(h)     Conviction of Employee of a crime (misdemeanor or felony);

(i)    Employee's falsification of patient records, invoices, including, without limitation, time and place of delivery, extent of service, combining sessions, fraudulent signatures parents and/or caregivers, misrepresentations of client's level of functionality, overlapping in schedule, etc.;

(j)    Employee's abuse or mistreatment of a student, or any other violation of ethical and/or professional standards of care; or

(k)    Death of the Employee.

6.2    Employee, to further student care, agrees to provide at least thirty (30) days' notice to the Employer of his/her resignation and to be actively involved in the transfer of children to a new provider for a reasonable time beyond his/her termination, as required.

6.3    Upon termination for any of the foregoing causes, Employee shall be entitled to receive only the compensation accrued but unpaid as of the date of termination and shall not be entitled to additional compensation, except as expressly provided in this Agreement.

6.4    If there shall be a change in the laws, rules, regulations, or general instructions applicable to the provision of the Services (or in the application thereof), the adoption of new legislation, or a change in the reimbursement system, any of which materially affects the reimbursement which the Employer may receive for the Services furnished to children, the Employer may by notice to Employee amend this Agreement to include a new basis for compensation for the services furnished pursuant to this Agreement. If such notice of new basis is given and if Employee does not accept the new basis for compensation, Employee, within thirty (30) days' of his/her receipt of such notice, may terminate this Agreement by thirty (30) days' prior notice to the Employer on any future date specified in such notice. The new basis for compensation shall be used until such future date.

## VII.    Malpractice Liability Insurance

7.1    At all times during the term of this Agreement, Employee shall maintain at his/her own cost and expense a malpractice and liability insurance coverage in the amount of $1,000,000/$3,000,000. Employee agrees to deliver a certificate of insurance to the Employer evidencing aforementioned coverage before the date of commencement of employment hereunder. This certificate of insurance shall provide that said insurance policy will not be cancelled without at least a thirty (30) day prior written notice to the Employer.

## VIII.    Non-Solicitation and Non-Disclosure

8.1    Non-Solicitation. Employee undertakes and agrees that during the term of this Agreement, and for a period of two (2) years after the date of termination of employment hereunder, regardless of cause, Employee will not, directly or indirectly, employ, cause to be employed or otherwise solicit any employees or service providers of the Employer or any entity

that has a business relationship with the Employer.  Employee also agrees that during the term of this Agreement, and for a period of two (2) years after the date of termination, regardless of cause, Employee will not contact, call or solicit, or assist another in contacting, calling or soliciting any person or entity that is a student, client, patient or customer of the Employer or any entity that has a relationship with the Employer, except in the performance of Employee's job duties under this Agreement.

8.2     Scope of Covenant.  Should the duration or range of proscribed activities contained in paragraph (a) above be held unreasonable by any court of competent jurisdiction, then such duration or range of proscribed activities shall be modified to such degree as to make it or them reasonable and enforceable.

8.3     Non-Disclosure of Information.  Except as necessary and appropriate to carry out Employee's job duties hereunder, Employee shall (i) never, directly or indirectly, disclose to any person or entity for any reason, or use for his/her own benefit, any Confidential Information (as hereinafter defined) either during the term of this Agreement or following termination hereof, (ii) at all times, take precautions necessary to protect from loss or disclosure by Employee any and all documents or other information containing, referring or relating to Confidential Information, and (iii) upon termination of Employee's employment for any reason, promptly return to Employer any and all documents or other tangible property containing, referring or relating to such Confidential Information, whether prepared by him/her or others.

8.4     For purposes of this Agreement, "Confidential Information" means any information relating in any way to the business of the Employer, its subsidiaries, parent or affiliates disclosed to or known to the Employee as a consequence of, result of, or through Employee's employment with Employer which consists of technical and non-technical information about the Employer, its subsidiary's, parent's or affiliate's products, processes, programs, concepts, forms, business methods, data, any and all financial and accounting data, marketing, customers, customer lists, children, patients, patient lists, and services and information corresponding thereto acquired by Employee during the term of or as a result of this Agreement.

8.5     It is agreed that any breach of this section by Employee shall entitle Employer to apply to any court of competent jurisdiction to enjoin any violation, threatened or actual, of this section.

## IX.    Covenants, Representations and Warranties of Employee

9.1     Employee covenants, represents and warrants that Employee is duly licensed and/or certified to provide the Services in the State of New York and shall keep his/her licensure and/or certification in full force and effect at his/her sole costs and expense during the term of this Agreement.

9.2`    Employee covenants, represents and warrants that he/she has never had, nor has ever engaged in any conduct which would cause a suspension and/or revocation of a license to provide teaching services of any kind, including but not limited to special education teaching services, in any state or country.

9.3    Employee covenants, represents and warrants that he/she has never been subject to, nor has ever engaged in any conduct which would cause a disciplinary hearing by any federal, state or local governmental agency or any other regulatory body.  Should Employee become subject to any such disciplinary hearing, Employee shall inform Employer immediately of the nature of such hearing.

9.4    Employee covenants, represents and warrants that he/she has never been the target of a Medicare or Medicaid investigation, audit or other review and, to the best of Employee's knowledge, has always engaged in conduct in full compliance with the Medicare law, the Medicaid law and the regulations thereunder. Should Employee become subject of a Medicare or Medicaid investigation, audit or other review, Employee shall inform Employer immediately of the nature of such investigation, audit, or review, and agrees to authorize Employer to obtain information regarding such investigation, audit or review directly from the entity performing the investigation, audit or review.

9.5    Employee covenants, represents and warrants that he/she is not the subject of any action or proceeding which would jeopardize, prohibit or unfavorably impact his/her employment hereunder.

9.6    Employee covenants, represents and warrants that he/she knows of no state of facts which would adversely impact his/her employment hereunder.

## X.    Indemnification

10.1    Employee agrees to indemnify, defend and save the Employer harmless from any claim, loss, cost, damage or expense, including, without limitation, attorney's fees and court costs, which the Employer may sustain, suffer or incur as a result of any action or claim brought against it, which action or claim may arise from Employee's negligence, acts or omissions.

## XI.    General

11.1    Entire Agreement.  This Agreement and any and all incorporated attachments thereto, including, without limitation, the Provider Agreement between the Employer and the DOH, embodies the entire understandings and obligations of the parties with respect to the subject matter of the Agreement, and it supersedes all prior agreements or understanding pertaining to thereto, whether written or oral.

11.2    <u>Amendment or Modification</u>.  No amendment or modification of this Agreement shall be valid or binding upon the parties unless made in writing and signed on behalf of each by their respective representatives, duly authorized.

11.3    <u>No Assignment</u>.  Employee may not assign his/her rights or obligations under this Agreement.

11.4    <u>Binding Effect</u>.  This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Employer and the heirs, representatives and beneficiaries of Employee.

11.5    <u>No Waiver</u>.  Neither the waiver by either party hereto of any breach of or default under any of the provisions of this Agreement, nor the failure of either of the parties to enforce any of the provisions of this Agreement or to exercise any right hereunder, shall be construed as a waiver of any subsequent breach or default, or as a waiver of any such rights or provisions hereunder. No waiver shall be effective unless it is in writing and signed by the party asserted to have granted such waiver.

11.6    <u>Severability</u>.  If any provision of this Agreement shall be declared invalid or illegal for any reason whatsoever, then notwithstanding such invalidity or illegality the remaining terms and provisions of this Agreement shall remain in full force and effect in the same manner as if the invalid or illegal provisions had not been contained herein.

11.7    <u>Notices</u>.  Any notice, communication, request, reply or advice or other notice to be given, made to either party shall be in writing and sent to each party at its address below as well as to their respective counsel at the addresses below and shall be deemed delivered if sent by (i) hand delivery, against receipt, the day it is delivered or (ii) nationally recognized overnight delivery service for next business day delivery, the next business day after mailing.

11.8    <u>Captions</u>.  The section headings contained herein are for the purposes of convenience only and are not intended to define or limit the contents of said sections.

11.9    <u>Singular/Plural</u>.  Whenever required by the context hereof, the singular shall include the plural, and vice versa; and the masculine gender shall include the feminine and neuter genders, and vice versa.

11.10    <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of New York and shall be construed and enforced in accordance with the laws of New York State. Any legal actions commenced to enforce any rights or obligations hereunder by either party hereto shall be venued in the County of Queens, State of New York.

11.11    <u>Waiver of Trial by Jury</u>.  Employee and Employer hereby waive trial by jury in any action, proceeding or counterclaim brought or asserted by either of them against the other on any matters whatsoever arising out of this Agreement.

11.12  Binding Arbitration of All Disputes.

(a)  The parties to this Agreement shall use their good faith efforts to voluntarily resolve between themselves any and all disputes, controversies or claims arising out of or relating to any provisions of this Agreement or any related agreements entered into pursuant hereto regarding an alleged breach of this Agreement, and/or regarding the performance or failure to perform by the parties of the terms of this Agreement or any related agreement. If any dispute cannot be promptly resolved, either party may request in writing to the other party that the matter be mediated by a qualified professional mediator to be mutually agreed upon by the parties. If the parties are unsuccessful in selecting such a mediator within ten (10) days after the request is first made, or if upon selecting a mediator are unable to resolve the matter within twenty (20) days following the selection of the mediator, then the dispute shall be finally settled by binding arbitration administered by the American Arbitration Association ("AAA") pursuant to its National Rules for the Resolution of Employment Disputes in effect on the effective date of this Agreement by a single arbitrator appointed by AAA.

(b)  This provision applies to any and all disputes arising under this Agreement, including but not limited to any claims of discrimination under State and federal laws, as well as any claims for breach of contract, tort, or other claims, excluding only claims as to which no agreement to arbitrate may be made under New York State law, including claims for unemployment and workers compensation benefits.

(c)  In the event that this mandatory arbitration provision is invoked by either party to this Agreement, each party shall bear its own costs, expenses and attorneys' fees associated with said arbitration.

11.13  Injunctive Relief.  Employee understands and agrees that Employer will suffer irreparable harm from the breach of any covenant contained herein including, the covenant not to compete and the covenant not to disclosure Confidential Information, and that monetary damages may be inadequate to compensate for such a breach. Accordingly, Employee agrees that, in addition to any other remedies available at law or equity, Employer shall be entitled to injunctive relief to enforce the terms of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized representatives as of the date set forth above.

**EMPLOYER:**                                         **EMPLOYEE:**

_____                              _____

NK PROGRESS INC.

By:  Program Director